Please, please. 3-0-9-0-0-7-4, consolidated with 3-0-9-0-0-7-5, 3-0-9-0-2-3-3, and 3-0-9-0-2-3-4, Patricia Moncelle, Appellant James Walker v. C.A.P. Air Freight, Inc., et al., received a motion for leave to file a supplemental brief of the appellant. Have you had an opportunity to see that? I have, C.A.P. Your Honor. We would just be requesting, should the court grant leave to file a supplemental brief, the defense would request a corresponding leave to file a written response to the decision that was decided by the appellant. Okay. Mr. Walker, we have not had a chance to see the brief. We've just seen the motion. You can't argue on it this morning, so we'll take the motion with the case, and how much time do you think you'll need to file a response? I would ask until Friday, January 29th. You can have that until January 29th, so we can go forward. May I please see the board? Mike McElvain and I represent Pat Moncelle, a former assistant in my office, whose husband, Mike, was killed when a truck crushed him in the car he was driving. Air Cap, one of the defendants, owned the truck. Cap Air Freight operated the truck. Defendant Matthew Rose drove the truck. I filed suit charging that the two corporate defendants were Woelfel and Wahin entrusting the truck to Gross because he was unqualified. He was addicted to alcohol and drugs. He had been convicted of 19 traffic offenses, including DUI. He was on probation for provision of heroin at the time he was hired and rehired. He had never taken a road test. He didn't have a medical certificate and a number of other reasons. He was unqualified. We charged Gross with Woelfel and Wahin operation of the truck because he drove a truck which was large enough to be called a commercial motor vehicle 40 miles an hour through a stop sign at a time when he admitted himself he was high. After the case pended for two years and ten months and two days before trial, all the defendants admitted all the counts, each one of which was based on Woelfel and Wahin. We took a voluntary dismissal, refiled, and when we refiled, the defendants moved to dismiss on the basis of race, judicata, and the circuit court allowed their motions. So we come here in the bizarre setting of a doctrine that was developed to protect the defendant who had won the first case from the harassment and inconvenience of having to defend a second case. The doctrine of race, judicata, is used as the rationale to dismiss our second case when, in fact, in the first case, the defendants had all admitted liability under every count of the first case. The doctrine of race, judicata, requires three things, a final judgment by a court of competent jurisdiction on the same cause of action between the same parties of their privies. And I'm here this morning to request you to find that in the first case, the 05 case, there was no final judgment. As to some of them, they were not heard by a court that had competent jurisdiction of the issues that were involved. And as to the claim of Pat individually against Gross, there was never any judgment, order, scratch, dent, anything in the first case that was in favor of Gross against Pat in her individual claim for property damage. And then lastly, should you find that anything in the 05 case was a final judgment, the court erred in dismissing our 214.01 petition to set aside whatever you hold is a final judgment. 214.01 petitions are applicable only to final judgments. There's two groups of rulings that the circuit court and the defendants rely on as forming the basis for their race, judicata defense. The first group are contained in a November 2, 2007, written order dealing with plaintiff's motion under 2604.1 asking for permission to add punitive damages to her request for relief. Those orders are not final judgments, nor were they heard by a court of competent jurisdiction. First, the statute is applicable only to complaints based on negligence or strict liability. This complaint only proceeded on the theory of Wolfram-Wanton's conduct. There's no mention of negligence, there's no mention of products liability, strict liability, any version of 402A. It's purely a Wolfram-Wanton complaint, and yet the court used the label of 2604.1 as the basis for denying her request for relief to amend. Isn't Wolfram-Wanton a level of negligence? Wolfram-Wanton's a level of mental state. I mean, you know, having no mental state and maybe strict liability, negligence, Wolfram-Wanton, and intent. But Wolfram-Wanton, in our briefs we've demonstrated, Wolfram-Wanton is long known as a different level of mental state from negligence. But it's not intentional. It's not intentional. But it supports punitive damages. I mean, that's our whole IPI instruction. Wolfram-Wanton is one of the mentioned, you know, brackets you can put in there to, if you find the defendant was Wolfram-Wanton, and if you find, you know, other things, then you can award punitive damages. Wolfram-Wanton is sufficient to award punitive damages. And it's not negligence, and it's not products liability. I have another question. You had said that the defendants all admitted liability. Didn't the trial court throw out your counts against, on the basis of the Federal Motor Vehicle Safety Code or something to that effect? He threw out no counts. He did dismiss a couple subparagraphs on that basis. But he, every single, there were 10 counts in the second amended complaint, the one that was pending in 2007 in the 05 case. Every count still stood and would have supported a judgment. He only dismissed certain subparagraphs. And, you know, we'll get to it in a minute, but cases like, you know, going back to Hull or a number of pre-Hudson cases and two excellent post-Hudson cases, Piagentini and Curtis v. Loffey, all hold that just throwing out a couple subparagraphs just establishes what the defendant did. What remaining subparagraphs of wrongdoing are going to be the basis for the trial. It's not a final judgment. The second reason that there's no final judgments in the November 2nd written order is that denying someone the right to amend and add punitive damages is not enough of a cause of action to arise to the level of final judgment. The Supreme Court said in Heinrich, when the basis for recovery under the counts dismissed is different from those left standing, then the dismissal is a final judgment because it disposes of a distinct cause of action. But when you don't dismiss enough to dismiss a distinct cause of action, it's not. And there's great language in the Kleinworth case, the only Supreme Court case that says, quote, punitive damages are not an independent cause of action. So then there's appellate court cases like McGrew that hold precisely that, that denying the right to seek punitive damages is not a final judgment. There's a couple other cases involving other elements of punitive damage. And so for that reason, there has to be a line somewhere. I mean, would someone who was seriously injured and had $300,000 of medical expenses, would a motion in limine or a motion for partial judgment or summary judgment or something saying, well, one of the medical bills that one of the treaters rendered is not for this injury and therefore it's held out. I mean, would that be a final judgment? Well, no. And the Supreme Court's test of dismissing a distinct cause of action is a workable test, and it's one that's in the law. The second group of rulings upon which the circuit court and the defense face their race judicata consists of oral rulings on November 20th, dismissing some subparagraphs, and a written ruling that was issued November 26th as to cap, that only defendant addressed with cap, was cap, dismissing some additional subparagraphs. I think in general there were about, well, there were about four subparagraphs dismissed on the November 20th oral rulings and about four or five on the November 26th written order, leaving six subparagraphs remaining. One reason that the oral rulings are not a final judgment is they're not a judgment at all. There was no docket entry. There was no written order. There was nothing other than an oral pronouncement. And that's not enough to be the basis of a final judgment. As the Supreme Court said a long time ago, we refer to affirm or reverse the oral pronouncements of a trial judge. And in this situation, the defendants had assured the judge they would prepare an order, but none was ever prepared and none was ever entered. Secondly, even setting aside the, shall we say, more procedural shortcomings of the November 20th and the November 26th announcements, they are not final judgments in substance. They don't dismiss enough. They don't dismiss a count. They don't dismiss a theory of recovery. And there's a number of cases, approximately 16 before Hudson, saying if you don't dismiss all of a theory of recovery, it's not a final judgment. Two cases, Piagentini, the second Piagentini case, and the Fourth District's case in Curtis v. Luff, we have looked at this even after Hudson, when it was more important than ever. Now we're trying to decide if this is going to be the basis for res judicata. And, hell, dismissing one or more subparagraphs, the allegations of wrongdoing, is not a final judgment when you leave standing other subparagraphs of wrongdoing that will form the basis for the recovery by the plaintiff. I won't argue, but we believe there's additional support for our position in the supplemental briefing on both of these points. Pat, as an individual, Pat Monselle, individually, never lost anything to Matthew Gross in the O5 case. Stated the other way, Gross never won anything against Pat Monselle in her individual capacity in the O5 case. So there's no basis whatsoever to dismiss those counts of the OA case where Pat, individually, is making a claim against Gross in the O5 case and in the OA case. It's for the damage to the vehicle. But the defendants say, well, yes, that's true. But, here's how you could rationalize even the dismissal of Pat's individual property damage claim against Gross under the doctrine of res judicata. Pat owned a car jointly with her husband. When her husband died, his estate had the right to bring in a property damage action. He didn't bring it. The estate didn't bring it in the O5 case, but it could have. And Pat, as special administrator serving as a conduit for the wrongful death case, she brought it and she lost that claim for punitive damages because the court followed Madoveski and the other cases saying that the tragic part of Illinois law will award punitive damages for fender benders, for a broken arm, but not for the complete loss of life. Philosophical question. I'm not asking you straight now today, but it sure is bizarre. Counsel, last two minutes. Thank you. The reason there's nothing to support the dismissal under any theory or any concept is that as to Pat and her individual claim, the estate didn't own any aspect. As soon as Mike died, Mike was probably dead before the car came to rest. The truck drove his car 130 feet. Mike was making an awful left turn. The truck came through the red light and drove the car 130 feet. Mike sustained massive injuries and everybody who came upon him on the scene, he was already dead. He was probably dead before the car stopped moving, but in any event, he never owned the right to bring the property damage action on your joint tenancy. It promptly went to Pat. So his estate never had the right. Just like his estate had no right to bring an action for the damage to this microphone or those pencils because it didn't own it, he didn't own the right to bring the action for the property damage to the car. So the estate couldn't have brought it, didn't bring it. It was a different cause of action from any of those that defense rests on. In other words, the wrongful death case is not the same as a property damage action owned by Pat. And so for those reasons, there's no basis whatsoever to rationalize the dismissal of Pat's individual claim for property damage. I have just one question, Mr. Walker. Do you, are you arguing that if we were to find that there were final judgments with regard to the original claims that you talked about under your first part of your argument, that Hudson would not require the dismissal of the other claims? Well, of course, I don't know which ones you would. But I mean, Hudson would, the defendants would be entitled to relief depending on which trial court rulings you said were final judgments. I mean, what I'm saying, they're entitled to no relief because I'm saying there's no final judgments. But if, and then it becomes important, which of the rulings did you say are final judgments as to which counts in the 08 case would be dismissed? So you're suggesting that we can pick and choose substantively where Hudson seems to suggest that if there's been a final judgment on any aspect of the case, that a voluntary dismissal resolves the entire case. Well, Hudson was a one plaintiff, one defendant case. You know, one count of negligence, one count of willful harm. So my answer wasn't based on any quarrel with Hudson, just the fact that this case is more complicated. Multiple plaintiffs have, in one capacity, is bringing a wrongful death count. In another capacity, their own individual property damage claim. In a third capacity, the estate is a plaintiff in the 08 case. And then there's three defendants. So the complexity comes from the fact there's more claims in this case than there were in Hudson. We're not here fighting with Hudson. We believe we win under Hudson because there's been no final judgments. Okay. Are there any other questions? Okay, thank you. Ms. Murdo? Good morning. May it please the Court, Counsel. My name is Barbara Murdo. I represent Cap Air Freight, Inc. Present for Air Cap LLC are David Jones, and for Matthew Gross is Scott Umland. Defendants are asking this Court to do three things. First, affirm the dismissal of the 2008 case because the trial court's application of the doctrine of res judicata to the facts of that case was correct. Secondly, we ask that you affirm the judgment entered on plaintiff's petition for relief from judgment in the 2005 case because the record demonstrates that the facts asserted in that petition, even when taken as true, could not have entitled plaintiff to relief, therefore the petition was insufficient as a matter of law. Finally, we ask the Court to affirm the order resolving the trial court-initiated rule-to-show-cause proceeding since plaintiff's only challenge to that is jurisdictional, and the trial court was well within its jurisdiction to investigate potential violations of Supreme Court rules that occurred in the proceeding before it. In the alternative, plaintiff simply failed to demonstrate that she suffered any prejudice as a result of that proceeding, therefore any error was harmless as to plaintiff. Despite plaintiff's best efforts to complicate this case and argue facts outside the record, this is actually quite simple. The relevant facts in the record are straightforward and demonstrate that the trial court's application of res judicata was correct and should be affirmed. As plaintiff acknowledges, Illinois law is clear that res judicata applies when three simple requirements are met. When there's a final judgment on the merits by a court of competent jurisdiction, identity of the parties in the case, or at least privity of interest between the parties in the first case and the parties in the second case, and identity of the causes of action. There can't be any reasonable dispute that the two lawsuits involve the same cause of action and the same parties. As the Supreme Court explained to us in the River Park case, a cause of action for purposes of res judicata is defined by a transactional test. The cause of action here is the November 2004 collision between vehicles driven by Michael Moncel and by Matthew Grubbs. There's one cause of action, even though there are multiple theories of liability or claims for relief that arise from it. Both the 2005 case and the 2008 case involve the same plaintiff in both the representative and individual capacities suing the same three defendants for claims arising out of the same cause of action. Plaintiff disputes that there was a final judgment rendered by a court of competent jurisdiction. But in the 2005 case, each defendant obtained one or more final judgments against plaintiff with respect to definite and separate parts of her litigation. And plaintiff in each of her capacities had one or more of her separate claims eliminated from the 2005 case. It doesn't matter that not every defendant obtained a final judgment against plaintiff in each of her separate capacities. The Cooper and Muhammad cases that are cited in our brief tell us that extinction of a claim as to one defendant extinguishes the claims as to all defendants on the same cause of action after voluntary dismissal, which I believe is the question that Justice McBade posed to Mr. Walker. Plaintiff has not cited any cases that hold otherwise. And to hold otherwise would actually be inconsistent with the purpose of res judicata, which is to promote judicial economy and prevent repetitive and harassing litigation by requiring all claims arising out of the same transaction or occurrence to be litigated in the single proceeding. Under Ryan and Hudson, when any judgment is entered against the plaintiff on any separate and distinct part of the cause of action, the plaintiff cannot voluntarily dismiss the remaining claims, then refile and attempt to relitigate without facing a res judicata defense. Under res judicata, the entire cause of action is barred. Not just the claims that were actually raised and litigated to conclusion, but also claims or theories of recovery that could have been raised and litigated. If any one of the four orders in this case can be afforded res judicata effect, then the judgment of the trial court must be affirmed in its entirety. Under long-established Illinois law, the final orders that were entered in the 2005 case became appealable immediately upon plaintiff's voluntary dismissal, which terminated her litigation in its entirety. That's a critical distinction for many of the cases plaintiff cites that did not involve voluntary dismissals. Plaintiff did not appeal any of the orders entered against her in the 2005 case, rendering them conclusive. And then immediately upon her refiling in the 2008 case, all defendants moved to dismiss it with prejudice based on res judicata. Plaintiff urges the court to adopt the standard that nothing less than resolution of an entire count of a complaint would trigger application of res judicata. Using count as your standard is arbitrary though, and it will lead to inconsistent results and subject to manipulation by a pleader. Conceivably, a plaintiff could plead every allegation of wrongdoing in a complaint in a separate count if he or she wants. Or, on the flip side, a pleader could include numerous factually distinct transactional occurrences in a single count for the express purpose of avoiding the effect of res judicata when the trial court disposes in a pretrial manner of the weaker claims. Using the count as the standard would allow the important determination of whether res judicata will apply to be determined on the whim of the pleader rather than on the substance of the trial court's order, which is just bad policy. It would also lead to claim splitting and forum shopping because a plaintiff would be able to avoid the effect of a partial summary judgment on any distinct claim simply by voluntarily dismissing their case and refiling without appealing and then try again for a more favorable ruling before a different judge. Plaintiff attempts to argue that the trial court here lacked jurisdiction to enter an order dismissing her punitive damage claims because that's the only circumstance under which that order could not be afforded res judicata effect. She makes no similar jurisdictional argument with respect to partial summary judgments. Plaintiff's jurisdictional arguments do lack merit, and the numerous cases she cites in her brief do not support her arguments. But plaintiff does make a very interesting argument in her reply brief that, you know, look, here are all these cases and statutes that preclude the award of punitive damages in various types of cases, and this statute would have provided sufficient authority for the trial court to deny plaintiff leave to add her claims for punitive damages. The problem that plaintiff stumbles into is that we do have the wrongful death statute. Pardon me. We do have the wrongful death statute in Illinois, and the Illinois case law interpreting that statute is clear that punitive damages claims cannot be awarded in wrongful death cases, period. So even apart from Section 2-604.1 of the Code of Civil Procedure, the trial court had an independent basis for disposing of plaintiff's punitive damage claims based on wrongful death. Plaintiff cannot simultaneously invoke the trial court's subject matter jurisdiction under the wrongful death statute, and then deny that the court has jurisdiction to resolve her claims against her. What plaintiff did in the 2008 case is the same claim splitting that the Illinois Supreme Court explained to us was unacceptable in Rhine. Plaintiff brought new claims for property damage, and new claims under the Cannabis and Controlled Substances Tort Claims Act that she never raised in the 2005 case. And worse yet, she simply ignored the final dispositions that were entered in the 2005 case and attempted to resurrect those same claims again in the 2008 case without ever having appealed the adverse rulings. Plaintiff had a number of options available to her after a few of her claims were resolved in favor of each of the defendants in the 2005 case. Plaintiff could have sought findings pursuant to Rule 304A or 308 and could have attempted to appeal those judgments in the context of the 2005 case, but she didn't. Plaintiff could have proceeded to trial on her remaining claims and then appealed any and all adverse rulings in the context of the 2005 case, but again she didn't do that. Plaintiff could have taken her voluntary dismissal on the eve of trial in the 2005 case and then appealed the disposal of her punitive damages claims and the partial summary judgments in the 2005 case, but she didn't. Instead, plaintiff did the one thing that the Supreme Court in Rhine told us and again told us in Hudson, that you can't do without subjecting yourself to arrest judicata defense and that is to take a voluntary dismissal without appealing your prior adverse judgments and then simply refile your claims in a new proceeding and attempt to do over with a new judge. The Supreme Court's made clear that litigants who attempt to do that are subject to dismissal of the entirety of their cause of action under arrest judicata and there's no unfairness in holding plaintiff to the consequences of her own litigation choices in this case. The trial court's detailed written orders in the 2008 case demonstrate that it carefully reviewed all the orders that it had entered in the 2005 case and properly applied the doctrine of arrest judicata to the facts before it. The trial court also properly disposed of plaintiff's petition for relief from judgment in the 2005 case. The trial court's order makes clear that it accepted all the facts alleged in that petition as true for purposes of analyzing the efficiency of the petition, but concluded that those facts, even if true, could not have prevented any of the judgments that had been entered in favor of defendants in the 2005 case. Three of those final judgments were purely legal determinations. The two partial summary judgments and the disposal of plaintiff's punitive damages claims under the wrongful death statute. The thermos that was the subject of the section 2-1401 petition has no conceivable effect on those legal rulings. The trial court also concluded that the thermos could have had no effect on the disposal of plaintiff's punitive damages claims based on property damages, namely for the reason that there was no evidence that Matthew Gross was impaired by alcohol at the time of the accident. In fact, there was unrefuted testimony from two law enforcement officers affirmatively ruling out the possibility of impairment. Counsel has two minutes. Thank you. Very briefly, with respect to the rule to show cause proceeding again, plaintiff's only challenge is subject matter jurisdiction. It's somewhat disingenuous for plaintiff to argue that the trial court was without jurisdiction to consider whether any Supreme Court rules were violated by any party in connection with the matters alleged in the Hill's affidavit, because that's precisely what she suggested that the court should do in her section 2-1401 petition and in her motion to stay. In any event, the Belleville-Toyota line of cases explains that subject matter jurisdiction extends to the entirety of a justiciable controversy. Clearly, there was a case before the court, and the court had jurisdiction to preside over any proceedings to address potential rule violations that occurred in its presence. In any event, it makes no difference to the outcome, because plaintiff cannot show that she sustained any prejudice as a result of the proceeding, and therefore any error was harmless as to her. Careful review of the cases that plaintiff cites in her initial brief and in her reply brief and in her proposed supplemental brief demonstrate that those cases don't truly support the propositions for which they're cited. Over and over in her briefs and even in her arguments here today, plaintiff attempts to vilify the defendants, apparently helping to distract the court from the clear and relatively straightforward application of the doctrine of res judicata to the relevant facts of the case. Defendants ask the court to decline that invitation to distraction and to affirm the judgments below. Questions? Any questions? Thank you very much. David Jones will be speaking very briefly on behalf of ARACAC. Thank you. Mr. Jones? Good morning. Good morning. May I please have a question? I'm going to be very, very brief. In counsel's opening argument to you, he made the point that the defendants had all admitted liability. This is a very, very important point to your decision in this case, in my view. We admitted liability for compensatory damages. That's what we admitted liability for at that point in the case. Two days before trial, we did admit liability. We admitted liability for compensatory damages. The test for what a final order is in Illinois is right in the Dabena case. The Illinois Supreme Court's three cases here. There's Ryan, Dabena, and Hudson. This trilogy of Supreme Court cases. A judgment or order is final if it disposes of the rights of the parties either on the entire case, here it is, or on some definite and separate part of the controversy. The Gray case that we cite to you in our brief says punitive damages are not awarded as compensation  and to deter that party and others from committing similar acts of wrongdoing in the future. The burden is qualitatively different from the elements of the claim for compensatory damages. Thus, the trial court's ruling on punitive damages, I'm reading from Gray, the trial court's ruling on punitive damages disposed of Gray's rights and Hull's regarding a definite and separate part of the case and the order was final and appealable upon Gray's voluntary dismissal of her case. The point that Mr. Walker made to you, that we admitted liability, is exactly the point here. We admitted liability as to compensatory damages. The punitive damage aspect of the case, a separate and distinct part of the case, had been dismissed and that order was final for this reason. My only other point, subject matter jurisdiction. Mr. Walker, a plaintiff, has made a point in the brief and today that the court was without subject matter jurisdiction to rule on punitive damages under 2604.1. On page 9 of the reply brief, the plaintiff lists several statutes and says, well, only if this statute applied, maybe there would be some reason for the court to have subject matter jurisdiction. This isn't a medical malpractice case, for example, on page 9. This isn't that, this isn't that. Well, as Ms. Myrtle pointed out to you, Your Honors, this is a wrongful death case and it's disingenuine to come before the court and say that the trial court had no subject matter jurisdiction to determine whether punitive damages would apply in this wrongful death case when the subject matter jurisdiction of the court was invoked by the plaintiffs bringing a wrongful death case before the court. Right, wrong, or indifferent on whether the hearing should have been under 2604.1, there's no question that the trial court had subject matter jurisdiction to decide whether or not there would be punitive damages in this case and that is a separate and distinct part of the case. The cases don't say cause of action. The cases say if it's a distinct, if it is some definite and separate part of the controversy. Dubena, the only Supreme Court in Dubena. And there can't be any question, and Mr. Walker's point that the defendants admitted liability is exactly the point. We admitted liability to a separate and distinct part of the case, that is compensatory damages. That's his time. Thank you. Thank you, Mr. Johns. Mr. Walker, any rebuttal? Thank you. Ms. Murnau said that Cooper in some other case, and I'm sorry, I couldn't hear what other case she mentioned. She may have mentioned Gray, probably. Thank you. Early, support her position that, you know, dismissal of some subparagraphs as a final judgment. The plaintiff agrees. But when she said, and plaintiff has cited nothing in opposition, I couldn't more strongly disagree. There's 20 cases contrary to Cooper and Gray. And the two most recent cases on this whole point are Piagentini and Curtis, which specifically say dismissal of some, but not all, the subparagraphs alleging the wrongdoing is not a final judgment. So when they say that there's nothing in opposition to Cooper and Gray, that's wrong. There are. There's about 16 or 18 cases before Cooper and two after Cooper. And those cases are post-Hudson cases. And another thing. The defense says, well, it's no big deal. The Supreme Court didn't grant leave to appeal in Piagentini, too. It is a big deal. First time Piagentini came up, the Supreme Court said, reconsider this in light of Hudson. First district reconsidered. It said we have the same result, slightly different language reflecting their analysis. This court recently had a situation where a matter was set back. This court issued its opinion. The Supreme Court looked at the opinion and was somewhat critical of this court, saying, well, you didn't do what we said. So I think there's a lot of reason to believe the Supreme Court looked carefully at Piagentini, too, when it denied leave to appeal the second time and said, well, it looks like they did what we told them to do. The defense says, well, plaintiff could have appealed those rulings in the first case under 304A. No, we could not, because they're not final judgments. If they're not final judgments, you can't appeal them on Monday. You can't appeal them on Tuesday. You can't appeal them on odd number days or even number days. They're unappealable, whether it's under 301 or 304A or whatever. Then plaintiff said, well, you could have asked permission to, you could have sought leave to appeal under 308. We agree. But the gotcha there is 308 is only applicable to non-final judgments. And to the extent the defense tells you that we could have gotten relief under 308, they win our case for us, because you can't seek leave to appeal a final judgment under 308. The rule is for interlocutory orders, not otherwise appealable. And in the committee comments, it says non-final judgments. Air Cap says, well, the Gray case takes us home. Gray is unusual in that when the plaintiff asks for permission to amend and put punitive damages in its request for relief, the only two theories in the complaint then were negligence and product liability. The very two theories mentioned in 2604.1A, 2604.1A. So that court had jurisdiction to entertain that motion because the complaint that was on file fell right within the statute. And secondly, that court said, now, if we let you do punitive damages, you will have to prove a new and higher level of mental state. We talked about strict liability, negligence, willful and wanton intent. You've only got strict liability and negligence in your complaint now. If we let you put punitives in, you'll have to prove at least willful and wanton. We find you can't do that. Counsel, that's one minute. Thank you. That's what made that order a final judgment because it did dispose of a separate theory of recovery. That was the only thing in the case that required willful and wanton was the request for punitive damages. Lastly, Air Cap says, well, the plaintiff is not giving you the right stuff here on subject matter jurisdiction. Subject matter jurisdiction has had a sort of a tortuous ride semantically since the Belden cases, and I've discussed that in a reply brief. But courts, including this court, as late as January 11th of 2010, have continued to say there are situations where, even though we have jurisdiction of the parties and it's the type of case that courts hear. Are you talking about County Collector? Well, I was going to talk about County Collector and I was going to talk about Keene. I mean, there are situations when it's outside the statute and courts say, this court included, wait a minute, whether you want to call it subject matter jurisdiction or lack of authority or whatever, when you do that, you're so far outside the painted lines that your order is void. That's our position as to this case. Thank you. Any other questions? We thank you all for your arguments this morning. We'll take this matter under advisement and we'll issue a written decision as to whether or not...